**RSR CORPORATION, Plaintiff,**

v.

**ENVIRONMENTAL PROTECTION AGENCY, et al., Defendants.**

**Civ. A. No. CA 3–82–1056–G.**

United States District Court,
N.D. Texas,
Dallas Division.

July 10, 1984.

Robert M. Cohan/Patrick R. Cowlishaw, Wald, Harkrader & Ross, Dallas, Tex., Shira Modell, Wald, Harkrader & Ross, Washington, D.C., for plaintiff.

Mary Anne Moore, Asst. U.S. Atty., Dallas, Tex., Catherine A. Cotter, Land & Natural Resources Division, U.S. Dept. of Justice, Washington, D.C., Patrick Rankin, Asst. Regional Counsel, Region VI, U.S. Environmental Protection Agency, Dallas, Tex., for defendants.

## MEMORANDUM OPINION

FISH, District Judge.

### Factual Background

At the time this suit was instituted, plaintiff RSR Corporation ("RSR") owned and operated a secondary lead smelter in the City of Dallas, Texas. In discharging its duties under the Clean Air Act, 42 U.S.C. § 7401, *et seq.*, Region VI of the defendant United States Environmental Protection Agency ("EPA") collected various documents regarding RSR's smelter which are now sought by members of the public under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552.[1] RSR objects to release of some of the documents on grounds that 5 U.S.C. § 552(b)(4) and 18 U.S.C. § 1905 (the Trade Secrets Act) protect them from disclosure. The documents at issue are:

1. A five page 1978 emissions inventory data form provided by RSR to the Texas Air Control Board on February 7, 1978 and to EPA on August 14, 1979 ("TACB Emissions Inventory Form");

2. A fifteen page federal Air Pollutant Emissions Report dated October 13, 1980;

3. Three blueprints schematically depicting process flow, emission points, and controls submitted by RSR to EPA on October 13, 1980 (the three blueprints are entitled "Major Activity Process Flow," "Emission Point Plot Plan" and "Emission Control Major Process Activities"); and

4. A sixteen page EPA inspection/monitoring report dated September 14, 1981 and an addendum thereto dated October 13, 1981.[2]

In accordance with its regulations, *see* 40 C.F.R. § 2.204, *et seq.*, EPA initially withheld disclosure of the documents in question. By letter dated January 11, 1982, EPA requested RSR to provide certain information regarding each of the documents in question. RSR responded to this request by letter dated January 25, 1982. On June 10, 1982, EPA issued its "Business Confidentiality Determination of the Regional Counsel," an administrative determination that the documents in question were not protected from disclosure. On June 30, 1982, RSR filed a complaint in this court to enjoin disclosure of these documents. The case is now before the court on cross motions for partial summary judgment.

### The Issues

RSR outlines the issues for the court's determination as follows:

1. Whether EPA's determination that the RSR documents fall within its definition of "emission data" was arbitrary, capricious, and an abuse of the agency's discretion, and must, therefore, be set aside under section 10(e)(2)(A) of the Administrative Procedure Act, 5 U.S.C. § 706(2)(A);

---

1. EPA received a letter dated January 6, 1982 from the office of attorney Windle Turley requesting information about RSR on behalf of several clients who, according to the letter, "have suffered injuries from exposure to lead from a neighborhood lead smelter plant."

2. Originally, RSR opposed release of another document, the Texas Air Control Board stack sampling report dated December 6, 1979. In a letter dated September 11, 1983, EPA informed the court that RSR had withdrawn its objection and that EPA had released the document to the public.

2. Whether EPA's regulatory definition of "emission data" exceeds the agency's statutory authority and must, therefore, be set aside under section 10(e)(2)(C) of the Administrative Procedure Act, 5 U.S.C. § 706(2)(C); and

3. Whether EPA's disclosure decision was "not in accordance with law" and must, therefore, be set aside under section 10(e)(2)(A) of the Administrative Procedure Act.

### Standard of Review

Neither EPA nor RSR questions the applicability of Section 706 of the Administrative Procedure Act to this case. That section provides, in pertinent part, that:

The reviewing court shall—

   \*    \*    \*    \*    \*    \*

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

  \*    \*    \*    \*    \*    \*

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or]

(D) without observance of procedure required by law . . . .

5 U.S.C. § 706(2).

Under section 706, a court must generally consider three questions: *first,* whether the administrator acted in the scope of his authority; *second,* whether the choice made was arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law; and *third,* whether the agency followed procedural requirements. These questions are divisible into three categories —statutory, procedural and substantive. *Mississippi Commission on Natural Resources v. Costle,* 625 F.2d 1269, 1275 (5th Cir.1980).

From its review of the administrative record in this case, the court has concluded that the substantive issue, *i.e.,* whether EPA's action was arbitrary, capricious, or an abuse of discretion, must be decided in favor of RSR. As a result, the remaining arguments asserted by RSR and EPA need not be discussed.

### The Substantive Issue

The substantive issue is whether EPA's determination that the documents in question are "emission data," which are thus subject to disclosure under Section 114 of the Clean Air Act (42 U.S.C. § 7414 and the regulations promulgated pursuant thereto) was arbitrary, capricious or an abuse of discretion.

■ An agency's decision is ordinarily entitled to a presumption of regularity. *Louisiana Environmental Society, Inc. v. Dole,* 707 F.2d 116, 119 (5th Cir.1983). When reviewing an agency decision, the court is not empowered to substitute its judgment for that of the agency. *Bowman Transportation, Inc. v. Arkansas-Best Freight System, Inc.,* 419 U.S. 281, 285, 95 S.Ct. 438, 441, 42 L.Ed.2d 447 (1974); *Mississippi Commission on Natural Resources, above,* at 1277, citing *Citizens to Preserve Overton Park v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, 823, 28 L.Ed.2d 136 (1971). Nevertheless, the court must make a searching and careful review of the facts to sustain an agency decision. The presumption of regularity does not shield an agency's decision from a thorough, probing, in-depth review. *Louisiana Environmental Society, Inc., above,* at 119.

The presumption of regularity may be overcome if there is no accompanying explanation of the reasons underlying an agency's decision. *Hercules, Inc. v. Environmental Protection Agency,* 598 F.2d 91, 123 (D.C.Cir.1978). To conduct an adequate review, the court must at a minimum (1) have an explanation of the facts and policy concerns relied upon by the agency in making its decision and (2) see if those facts have some basis in the record. *Process Gas Consumers Group v. U.S. Department of Agriculture,* 694 F.2d 728, 740 (D.C.Cir.1981), *cert. denied,* —— U.S. ——, 103 S.Ct. 1874, 76 L.Ed.2d 807 (1983). The agency must have examined the rele-

vant data, explained the evidence which is available and offered a rational connection between the facts found and the choice made. *Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Company*, 463 U.S. 29, ——, 103 S.Ct. 2856, 2871, 77 L.Ed.2d 443 (1983).

If the agency performed these functions, its decision is not arbitrary or capricious. *Aberdeen & Rockfish Railroad Co. v. United States*, 682 F.2d 1092, 1103 (5th Cir.1982). Conversely, if the agency failed to consider an important aspect of the problem, its decision is arbitrary and capricious. *Motor Vehicle Manufacturers Association, above*, at 2867. The focal point for judicial review is the administrative record already in existence, not some new record made initially in the reviewing court. *Motor Vehicle Manufacturers Association, above*, at 2870; *Louisiana Environmental Society, Inc., above*, at 119.

The key issue in this case is whether the materials held by disclosure of EPA, which is sought under FOIA, are "emission data." Emission data are defined as:

(A) Information *necessary to determine* the identity, amount, frequency, concentration, or other characteristics ... of any emission ...;

(B) Information *necessary to determine* the identity, amount, frequency, concentration, or other characteristics ... of the emissions ...; and

(C) A general description of the location and/or nature of the source to the extent *necessary to identify* the source and distinguish it from other sources ....

(Emphasis added). 40 C.F.R. 2.301(a)(2)(1).

EPA concluded that some of the documents in question [3] were emission data because they were necessary to determine emissions or their source. According to EPA, this method of determination was needed because:

Emissions from RSR's smelter are not continuously sampled. Except for the relatively rare occasions on which testing occurs, the only practical way to determine the amount of pollutants emitted by the facility or any source therein is to perform a "material balance calculation."

*         *         *         *         *         *

Nevertheless, as noted above, such calculations [material balance calculations] are often the only means of determining the amount of pollutants emitted by a source.

EPA's conclusion that the documents in question were necessary to determine emissions or source turns on the premise that the only practical way to determine the amount of pollution emitted is by a material balance calculation. Since all of EPA's conclusions regarding these documents flow from this premise, it is imperative that the factors supporting this critical proposition appear in the administrative record.

■ Although a court must normally defer to the expertise of an administrative agency, *City of Houston v. Federal Aviation Administration*, 679 F.2d 1184, 1190 (5th Cir.1982), it may not sanction an agency determination, claimed to be within its expertise, if the record fails to show what factors the agency considered before making the determination. Here, this court cannot determine, as it is required to do, whether EPA's determination is based on reason. *City of Houston, above*, at 1190 ("a court reviews the agency's procedures to ensure reasoned decision-making ...").

In other words, this court has no way of evaluating the correctness of EPA's statement that the material balance calculation is the only practical way to determine the amount of pollutants emitted. Is it the only practical way because of technology, cost, convenience, or some combination thereof? EPA concedes that some testing

---

**3.** EPA has not contended that the blueprint entitled "Major Activity Process Flow" was necessary to determine and identify emissions. As to that blueprint, the agency held that it could be disclosed because it did not constitute a trade secret. Given the court's disposition of this case, whether that document is a trade secret need not be determined at this juncture.

or sampling *does* occur,[4] but, as far as the administrative record goes, it does not explain why more frequent testing cannot occur or how frequent such testing is and why the testing that is done is not sufficient to determine and identify emissions. Indirectly, the agency also admits that other means exist for determining the level of emissions, at least in some circumstances.[5]

What is missing from the administrative record, therefore, is a discussion of alternative methods of identifying or measuring pollutants, with a comparision of their capabilities, advantages and disadvantages. The court " 'may not supply a reasoned basis for the agency's action that the agency itself has not given.' " *Motor Vehicle Manufacturers Association, above,* at 2867.

All this court has before it is EPA's bare conclusion that the only practical way to determine emissions is by a material balance calculation. On this meager record, the court cannot confidently conclude that EPA considered all factors relevant to this proceeding, including available alternatives, so that release of information claimed to be proprietary could be avoided unless required by statute.

Since the administrative record does not show that EPA's decision (1) considered and examined all relevant factors and alternatives or (2) adequately explained the evidence regarding these relevant factors and alternatives, its action in this case must be held to be arbitrary and capricious.

The court has been guided to this conclusion by the recent decision in *Motor Vehicle Manufacturers Association v. State Farm Mutual Automobile Insurance Co.,* 463 U.S. 29, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983). In that case, the Supreme Court held that the failure of the National Highway Traffic Safety Administration to give any consideration whatever to modifying a federal motor vehicle safety standard to require that airbag technology be utilized was arbitrary and capricious. Said the Court:

> Not one sentence of its rulemaking statement discusses the airbags—only option.
>
> \* \* \* \* \* \*
>
> The agency also failed to articulate a basis for not requiring nondetachable belts under Standard 208 .... By failing to analyze the continuous seatbelts in its own right, the agency has failed to offer the rational connection between facts and judgment required to pass muster under the arbitrary and capricious standard.
>
> \* \* \* \* \* \*
>
> The agency also failed to offer any explanation why a continuous passive belt would engender the same adverse public reaction as the ignition interlock .... More importantly, it is the agency's responsibility, not this Court's, to explain its decision.

103 S.Ct. at 2869, 2873–74.

The deficiencies pointed out in *Motor Vehicle Manufacturers Association* are similar to those here. Accordingly, that part of the case covered by this memorandum opinion is **REMANDED** to EPA for further consideration or proceedings consistent with the opinion. *See Motor Vehicle Manufacturers Association, above,* at 2874.

Rulings on other issues not addressed in this opinion are **DEFERRED** until such time as EPA has completed all proceedings related to the remand. When the proceedings on remand to EPA are completed, counsel for both parties will immediately report to the court in writing what issues require judicial resolution.

---

**4.** "Emissions from RSR's smelter are not continuously sampled. Except for the relatively rare occasions on which testing occurs ...."

**5.** "such calculations [material balance calculations] are often the only means of determining the amount of pollutants emitted ...."